UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

| | | |
|---|---|---|
| TINA FULLENWEIDER-HARRIS | § | |
| OBO NORMAN FULLENWEIDER, JR., | § | |
| | § | |
| Plaintiff, | § | Case # 1:19-cv-424-DB |
| | § | |
| v. | § | MEMORANDUM DECISION |
| | § | AND ORDER |
| COMMISSIONER OF SOCIAL SECURITY, | § | |
| | § | |
| Defendant. | § | |

## INTRODUCTION

Plaintiff Norman Fullenweider, Jr. ("Plaintiff"),[1] brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"), that denied his application for child disability benefits ("CDB") under Title II of the Act, and his application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the case is before the undersigned in accordance with a standing order. *See* ECF No. 18. Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 12, 16. Plaintiff also filed a reply. *See* ECF No. 17. For the reasons set forth below, Plaintiff's motion (ECF No. 12) is **DENIED**, and the Commissioner's motion (ECF No. 16) is **GRANTED**.

## BACKGROUND

Plaintiff protectively filed his CDB and SSI applications on May 15, 2015, alleging disability beginning August 28, 2014 (the disability onset date). Transcript ("Tr.") 10, 223.

---

[1] Plaintiff Norman Fullenweider, Jr. died on October 30, 2015 (from causes unrelated to his alleged disability). Tr. 10. The record indicates that Plaintiff died due to gunshot wounds inflicted by another person. Tr. 77-78, 230. Tina Anderson Fullenweider-Harris, Plaintiff's mother, was added as a substitute party. Tr. 10, 77. However, the Court will refer to the deceased claimant as "Plaintiff."

Plaintiff alleged disability due to: attention deficit hyperactivity disorder ("ADHD"), dyslexia, sleep apnea, obesity, schizophrenia, and a left knee injury. Tr. 19, 77, 245, 249. Plaintiff's applications were initially denied on September 10, 2015, after which Plaintiff timely requested a hearing. Tr. 10, 140, 156. Administrative Law Judge ("ALJ") Bryce Baird (the "ALJ") conducted an administrative hearing in Buffalo, New York, on January 3, 2018. Tr. 10, 71-107. Plaintiff's mother appeared and testified at the hearing and was represented by Jonathan Emdin, an attorney. Tr. 10, 71-107. Eric D. Dennison, an impartial vocational expert ("VE") also appeared and testified at the hearing. Tr. 10, 71-107.

The ALJ issued an unfavorable decision on March 7, 2018, finding that Plaintiff was not disabled. Tr. 10-20. On February 5, 2019, the Appeals Council denied Plaintiff's request for further review. Tr. 1-6. The ALJ's March 7, 2018 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

## II.    The Sequential Evaluation Process

The regulations provide for the payment of disabled child's insurance benefits if the claimant was 18 years old or older and has a disability that began before attaining age 22. See 20 CFR 404.350(a)(5). An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she

3

cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in his March 7, 2018 decision:

1. Born on August 27, 1996, the claimant had not attained age 22 as of August 28, 2014, the alleged onset date (20 CFR 404.102, 416.120(c)(4) and 404.350(a)(5));

2. The claimant did not engage in substantial gainful activity after August 28, 2014, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.);

3. The claimant had the following severe impairments: obesity; right knee injury; ADHD; and unspecified mood disorder (20 CFR 404.1520(c) and 416.920(c));

4. The claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926);

5. The claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)[2] except he could occasionally climb ramps or stairs but never climb ladders, ropes, or scaffolds.  He could occasionally make use of right foot controls.  He could occasionally balance, kneel, and crouch but could never crawl.  He was limited to simple, routine tasks that could be learned after a short demonstration or within 30 days.  He would not have been required to independently develop work strategies or identify workplace needs.  He was limited to no more than superficial contact with the public and to occasional interaction with coworkers.  He was limited to work that did not

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

require teamwork, such as on a production line, and he was limited to work that requires doing the same tasks every day with little variation in location, hours, or tasks;

6.  The claimant had no past relevant work (20 CFR 404.1565 and 416.965);

7.  The claimant was born on August 27, 1996 and was 18 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963);

8.  The claimant had at least a high school education and was able to communicate in English (20 CFR 404.1564 and 416.964);

9.  Transferability of job skills is not an issue because the claimant did not have past relevant work (20 CFR 404.1568 and 416.968);

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a));

11. The claimant was not under a disability, as defined in the Social Security Act, from August 28, 2014, through the date of death (20 CFR 404.350(a)(5), 404.1520(g) and 416.920(g)).

Tr. at 10-20.

Accordingly, the ALJ determined that, for the application for child's insurance benefits filed on May 15, 2015, Plaintiff was not disabled as defined in section 223(d) of the Social Security Act through the date of this decision. Tr. 20. The ALJ also determined that, based on the application for supplemental security income protectively filed on May 15, 2015, the claimant was not disabled under section 1614(a)(3)(A) of the Social Security Act.

## ANALYSIS

Plaintiff argues that the ALJ's decision was not supported by substantial evidence based on two points of errors. Plaintiff first argues that the ALJ erred in his evaluation of the medical opinion evidence. *See* ECF No. 12-1 at 13-19. Specifically, Plaintiff takes issue with the ALJ's assessment of the opinions of mental consultative examiner Kristina Luna, Psy.D ("Dr. Luna"), and internal medicine consultative examiner Hongbiao Liu, M.D. ("Dr. Liu"). *Id*. Plaintiff claims that the ALJ failed to sufficiently explain how he accounted for the mental limitations in Dr. Luna's

opinion and the physical limitations in Dr. Liu's opinion. *Id*. In his second point of error, Plaintiff argues that the ALJ failed to account for off-task limitations caused by Plaintiff's mental health limiting effects and episodic symptoms. *Id*. at 19-26. In response, the Commissioner argues that the ALJ reasonably concluded that, while Plaintiff was limited, he did not meet the strict standard to qualify as disabled under the Act, and the ALJ's decision was supported by substantial evidence. *See* ECF No. 16-1 at 9-10.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir.2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77. Upon review of the record and the ALJ's decision, the Court finds that substantial evidence supports the ALJ's decision, and the ALJ thoroughly discussed the evidence that supported his findings.

In April 2015, Plaintiff saw treating psychiatrist Horacio Capote, M.D. ("Dr. Capote"), for ADHD. Tr. 293-96. Plaintiff said that he had "started smoking marijuana regularly and ha[d] certainly had some vicissitudes and problems in his life including legal problems." Tr. 293. Plaintiff also said that he had enjoyed his recent job at FedEx, but he quit after arguing with his supervisor. *Id*. He expressed concern about "his memory, impulsiveness, difficulty staying focused, racing thoughts, distractibility and irritability sometimes bordering on rage, as well as anxiety." *Id*. He also stated he was "stressed out." Tr. 295. Dr, Capote observed that Plaintiff's affect was labile and tearful at times. *Id*. His thoughts were goal directed; his gait and station were normal; and he was cognitively intact. Tr. 294-95. Dr. Capote rated Plaintiff's global assessment

of functioning ("GAF") at 48.[3] Tr. 295. Dr. Capote prescribed Strattera and recommended that Plaintiff abstain completely from cannabis. *Id.*

In July 2015, consultative psychologist Dr. Luna recorded a number of mixed findings from her examination of Plaintiff. *See* Tr. 341-42. Plaintiff was noted to be "resistant, hostile, and irritable," and his manner of relating and overall social skills were poor. Tr. 341. Dr. Luna noted that Plaintiff's eye contact was poor, his speech was mumbled, and he appeared agitated; however, his thought processes were noted as coherent and goal directed. Tr. 341. He said he was angry and irritable; yet his attention and concentration were intact. Tr. 342. The doctor also noted that Plaintiff's insight was limited, and his judgment was poor; but his recent and remote memory were only mildly impaired, and his cognitive functioning appeared average. Tr. 342. Dr. Luna opined that Plaintiff had: no limitation in his ability to follow and understand simple directions and instructions or maintain attention and concentration; mild limitation in his ability to perform simple tasks independently and learn new tasks; moderate limitation on his ability to maintain a regular schedule, perform complex tasks independently, make appropriate decisions, and appropriately dealt with stress; and marked limitation on his ability to relate adequately with others. Tr. 343.

On the same day that he was examined by Dr. Luna, Plaintiff told consultative physician Dr. Liu that a gunshot wound to his left knee from May 2014 caused constant pain. Tr. 346. He walked with a limp, could not walk on his heels and toes due to knee pain, and could squat to 35% of normal. Tr. 347. His stance was normal; he did not use an assistive device; and he needed no

---

[3] GAF scores are designed to consider factors outside those used in disability determinations. *See Wilson v. Berryhill*, No. 16-CV-00664V(F), 2018 WL 4211322, at *2 (W.D.N.Y. Sept. 4, 2018) (noting the GAF is a "multiaxial scale is used to assess an individual's mental and physical condition on five axes, each of which refers to a different class of information"). The Social Security Administration has limited the manner in which GAF scores are used because they are generally not useful without additional supporting description and detail. *See Mainella v. Colvin*, No. 13-CV-2453, 2014 WL 183957, at *5 (E.D.N.Y. Jan. 14, 2014) (internal citations omitted). As the ALJ noted, a score of 48 indicates that Plaintiff's conditions caused serious symptoms or impairment in social, occupational, or school functioning indicative of serious symptoms. Tr. 18.

help changing for the examination, getting on and off the examination table, or rising from a chair. *Id*. He had full range of motion in his cervical spine, thoracic spine, and lumbar spine, as well as in his shoulders, elbows, forearms, and wrists. Tr. 347-48. However, he had somewhat reduced range of motion in his right knee (not his allegedly impaired left knee), and his joints were stable and nontender. Tr. 348. He had normal sensation and full strength throughout; there was no muscle atrophy; he had full hand and finger dexterity; and his grip strength was full. Tr. 348. A left knee x-ray showed metallic fragments but no fracture, dislocation, or destructive lesion. Tr. 350. Dr. Liu opined that Plaintiff had "mild to moderate limitation for prolonged walking, bending, and kneeling." Tr. 348.

In August 2015, State agency psychological consultant S. Juriga, Ph.D. ("Dr. Juriga"), reviewed the record to evaluate Plaintiff's mental abilities. Tr. 113-14, 117-18. When Dr. Juriga compared consultative psychologist Dr. Luna's examination with the rest of the evidence, Dr. Juriga believed that Plaintiff's "lack of cooperation [was] . . . likely secondary to purpose of obtaining disability benefits." Tr. 114. Dr. Juriga found treating provider Dr. Capote's findings more credible. Tr. 114. Dr. Juriga opined that Plaintiff experienced no more than moderate limitations, but he could not work directly with the general public. Tr. 117-18. The ALJ gave significant weight to Dr. Juriga's opinion and limited Plaintiff to only superficial interaction with the public. Tr. 15, 18). The ALJ noted that Dr. Juriga's opinion is generally consistent with the record as a whole, which documents Plaintiff's anger, irritability, and deficits in speech and social skill, suggesting that he should be limited to only superficial contact with the public. Tr. 18.

Plaintiff argues that the ALJ should not have given "heightened weight" to Dr. Juriga's opinion because there was an opinion from an examining source, Dr. Luna. *See* ECF No. 12-1 at 17. However, the ALJ gave significant weight to each opinion. He did not give more weight to the

opinion of Dr. Juriga, the reviewing source, than to the examining source, Dr. Luna. *See* Tr. 17-18. Moreover, Dr. Luna's opinion was consistent with Dr. Juriga's opinion, as they both opined that Plaintiff had generally moderate impairments other than a marked impairment in social interaction. *Compare* Tr. 343 *with* Tr. 117-18. Thus, the ALJ did not err in giving significant weight to the opinion of Dr. Juriga, a "highly qualified" psychologist who was "also [an] expert[]" in Social Security disability evaluation. 20 C.F.R. § 404.1513a(b)(1); *see Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) (unpublished) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record.").

With respect to Dr. Luna's one opined marked limitation—a limitation in Plaintiff's ability to relate adequately with others (*see* Tr. 18, 343)—the ALJ found that "[Plaintiff's] marked limitation in relating with others [was] accommodated by limiting [him] to work with no more than superficial contact with the public, to work with no more than occasional interaction with coworkers, and to work that did not require teamwork, such as on a production line" (Tr. 18). Plaintiff argues that these RFC limitations did not address his difficulties with supervisors. *See* ECF No. 12-1 at 16. However, Dr. Luna's opinion did not specify any particular difficulties working with supervisors. Tr. 343. In addition, after reviewing the record (including Dr. Luna's opinion), Dr. Juriga opined that, while Plaintiff should not work directly with the general public, he experienced no more than moderate impairment interacting with supervisors. Tr. 117-18.

Although Plaintiff may disagree with the ALJ's weighing of the evidence, the Court must "defer to the Commissioner's resolution of conflicting evidence" and reject the ALJ's findings "only if a reasonable factfinder would have to conclude otherwise." *Morris v. Berryhill*, No. 16-02672, 2018 WL 459678, at *3 (2d Cir. Jan. 18, 2018) (internal citations and quotations omitted).

That is not the case here. The ALJ reasonably determined that in spite of Plaintiff's mental conditions and symptoms, he remained capable of performing the range of simple, routine work described in the RFC.

The ALJ also considered and accorded little weight to Plaintiff's GAF score of 48. Tr. 18. As the ALJ explained, GAF scores "are considered a snapshot of functioning at the time of the examination and are not determinative of overall disability." *Id*. The ALJ also noted that Plaintiff's GAF score is generally inconsistent with evidence of Plaintiff's intact cognitive function during treatment, intact attention and concentration and only mildly impaired memory at his consultative examination, and his ability to drive, perform laundry, cook occasionally, perform personal care, and play sports. *Id*.

The ALJ also give significant weight to the opinion of Dr. Liu, that Plaintiff has mild to moderate limitation for prolonged walking, bending, and kneeling. Tr. 18. The ALJ explained that Dr. Liu's opinion is generally consistent with the record as a whole, which showed that although Plaintiff demonstrated knee pain, limp, and reduced range of motion, he had the ability to ambulate without an assistive device; he had normal strength; and the ability to play sports, suggesting that he had the ability to perform the range of light work described in the RFC. *Id*.

Upon review of the record, the Court finds that the ALJ's physical RFC assessment was fully consistent with Dr. Liu's opinion. The ALJ limited Plaintiff to light work, consistent with a mild to moderate limitation for prolonged walking. Tr. 15. *See* SSR 83-10 1983 WL 31251, at *6 ("[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday."). Likewise, the ALJ limited Plaintiff to only occasional—not frequent or constant—kneeling and crouching, consistent with a mild to moderate limitation for prolonged bending and kneeling. Tr. 15. *See Staley v. Saul*, No. 18-CV-01272F,

2020 WL 830437, at *4 (W.D.N.Y. Feb. 20, 2020) (unpublished) (citing *Lewis v. Colvin*, 548 F. App'x 675, 677-78 (2d Cir. 2013) (unpublished) ("the ALJ's determination that [the plaintiff] could perform 'light work' is supported by [the physician's] assessment of 'mild limitations for prolonged sitting, standing, and walking . . .'")); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013) (unpublished) (affirming RFC for light work with occasional climbing, balancing, stooping, kneeling, crouching, and crawling where consultative examiner opined the plaintiff had a "mild to moderate limitation for sitting for a long time, standing for a long time, walking for a long distance, pushing, pulling, or heavy lifting."); *Harrington v. Colvin*, 2015 WL 790756, at *15 (W.D.N.Y. Feb. 25, 2015) (unpublished) (moderate limitation to sitting, standing, and walking not inconsistent with finding that claimant could sit, stand, and walk for six hours a day, supporting RFC for light or medium work).

Plaintiff's remaining arguments are similarly unavailing. The ALJ reasonably found that Plaintiff's mother's description of Plaintiff's symptoms was inconsistent with the other evidence of record. Tr. 15-17. Plaintiff's mother claimed that Plaintiff experienced severe, potentially disabling, symptoms. However, the ALJ gave a number of well-supported reasons for concluding that Plaintiff's symptoms were not as severe as his mother claimed, including objective medical evidence and evidence of Plaintiff's activities of daily living. Tr. 15-17. The ALJ noted that Plaintiff's mother's testimony Plaintiff could not follow instructions, had poor memory could not sit still, had poor attention, was defiant, and mumbled (Tr. 15), but he also noted that education records showed disruptive behavior and suspension from college (Tr. 16). The ALJ also cited normal mental status findings from within the relevant period. Tr. 16 (citing Tr. 294-95, 41-42).

The ALJ likewise considered Plaintiff's report to Dr. Liu that he experienced constant left knee pain due to a previous gunshot wound. Tr. 16, 346. But the ALJ contrasted this report with

objective medical evidence showing full range of motion, full strength, normal sensation, no use of an assistive device, and normal gait. Tr. 17, 294, 347. Thus, the ALJ reasonably concluded that these objective findings were inconsistent with Plaintiff and his mother's description of Plaintiff's symptoms. Tr. 17. *See* 20 C.F.R. § 404.1529(c)(4) ("we will evaluate your statements in relation to the objective medical evidence").

Despite Plaintiff's argument that the ALJ did not account for his "episodic symptoms" (*see* ECF No. 12-1 at 19), there was no indication that his symptoms were episodic. Instead, as discussed by Dr. Capote, Plaintiff's symptoms improved with medications and worsened with marijuana. *See* Tr. 293. Furthermore, the ALJ did not cite only normal mental status observations while ignoring abnormal findings as Plaintiff suggests; rather, the ALJ also considered Plaintiff's abnormal findings. Tr. 16-17. Because the ALJ provided good reasons for discounting Plaintiff's and his mother's reports of Plaintiff's symptoms, those reports cannot support Plaintiff's claim that the ALJ should have included more significant limitations in the RFC. And as discussed above, the ALJ reasonably weighed the medical opinions as part of the RFC assessment.

Plaintiff also argues that "[t]he ALJ failed to further develop the record and close evidentiary gaps." *See* ECF No. 12-1 at 23-25. Plaintiff claims that "there are missing treatment notes, academic and intelligence testing, and primary doctor's functional assessment." *See* ECF No. 12-1 at 24. However, the record reflects that the agency fulfilled its duty to develop the record by requesting records from all medical sources that Plaintiff identified. *See* Tr. 252-55, 270, 110-12, 290-97, 298-304. Furthermore, at the hearing in January 2018, the ALJ granted Plaintiff's attorney an additional two weeks to obtain any additional records that needed to be submitted to the record. Tr. 74-75. None were submitted. Although Plaintiff submitted treatment records from Dr. Nathaniel Webster dated May 26, 2014 through September 21, 2015 to the Appeals Council

Tr. 31-70), as discussed further below, the Appeals Council found the evidence did not show a reasonable probability that it would change the outcome of the decision, and therefore, did not exhibit it. Tr. 2.

In sum, Plaintiff's argument that the ALJ erred by not obtaining academic and intelligence testing records that his attorney never told the ALJ were missing is meritless. *See Gonzalez v. Colvin*, No. 1:15-cv-00767(MAT), 2018 WL 1040250, at *3 (W.D.N.Y. Feb. 24, 2018) (unpublished) ("Moreover, the Commissioner's regulations provided that where a claimant has legal representation, the attorney is 'obligat[ed] to assist the claimant in bringing to [the Commissioner's] attention everything that shows that the claimant is disabled[.]'" (citation omitted)).Counsel cannot wait until an adverse decision and then cry foul if records could have been produced but were not.

In addition to the arguments discussed above, Plaintiff's brief presents (or more aptly, suggests) a number of passing unsupported arguments. He argues that the Appeals Council's "cursory, formulaic denial" warrants remand. *See* ECF No. 12-1 at 21. He also argues that the ALJ "failed to consider Plaintiff's pain and past gunshot wound as an impairment that caused him to need to elevate legs (*sic*)"; "failed to account for limiting effects in RFC"; did not address "Plaintiff's obesity in RFC (*sic*), such as pain, difficulties with prolonged walking, and elevation of legs." *Id*. at 25-26.

While the Court is not required to search the record for evidence that could support Plaintiff's undeveloped arguments, *see Lian v. Mukasey*, 278 F. App'x 17, 19 (2d Cir. 2008), the Court has nevertheless considered said arguments and finds them meritless. With respect to the records submitted to the Appeals Council, the Appeals Council was not required to further articulate its reasoning for denying Plaintiff's request for review. *See Pollard v. Halter*, 377 F.3d

183, 192 (2d Cir. 2004) (The Appeals Council's denial of review does not amount to consideration on the merits but is analogous to denial of certiorari. (citations omitted). In any event, the records from Dr. Webster are consistent with the ALJ's findings, and Plaintiff has not presented arguments to the contrary. Accordingly, the Court finds that the Appeals Council reasonably concluded that this additional evidence did not render the ALJ's decision unsupported by substantial evidence.

Regarding Plaintiff's alleged need to elevate his legs, no doctor opined that Plaintiff needed to elevate his legs, and there was no evidence of such outside of Plaintiff's mother's testimony (*see* Tr. 96). Plaintiff also suggests that the ALJ did not consider the combined impact of Plaintiff's severe and non -severe impairments. *See* ECF No. 12-1 at 26 n. 13. But Plaintiff does not point to a non-severe impairment that the ALJ did not consider, and the ALJ explicitly stated in his RFC discussion that he considered Plaintiff's non-severe conditions. Tr. 15.

Finally, the ALJ explicitly addressed Plaintiff's obesity at several points in his decision. *See* Tr. 12 (finding that obesity was a severe impairment at step two; Tr. 13 (considering whether Plaintiff's obesity aggravated a condition enough to make it *per se* disabling at step three); Tr. 16 (discussing Plaintiff's body mass index in the RFC evaluation). The ALJ also stated that he "considered any added or accumulative effects [Plaintiff's] obesity played on has ability to function." Tr. 17. Notably, Plaintiff has not pointed to any medical evidence showing that his obesity limited him more than the ALJ concluded. *See White v. Berryhill*, 753 F. App'x 80, 81 (2d Cir. 2019) (unpublished) ("[B]ecause [the claimant] never specified how his obesity further limited his functioning, any error on the ALJ's part was harmless." (citing *Prochaska v. Barnhart*, 454 F.3d 731, 737 (7th Cir. 2006)).

As noted above, the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would have to conclude otherwise." *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 448

(2d Cir. 2012); *Caron v. Colvin*, 600 F. App'x 43, 44 (2d Cir. 2015) (observing that, under the substantial evidence standard, the fact that the evidence may arguably be reconciled to a claimant's favor is "not probative of anything" as long as the ALJ's different interpretation was reasonable). Thus, "[i]f evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). Accordingly, the Court, , finds no error in the ALJ's determination that Plaintiff was not disabled.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 12) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 16) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

DON D. BUSH
UNITED STATES MAGISTRATE JUDGE